IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


EDWARD J. GARCIA                                                        PLAINTIFF

         v.                        Civil No.   14-5357

LUCAS GARDNER #478; and
JOSEPH STANDROD # 516                                            DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff, Edward J. Garcia,  pursuant to 42 U.S.C.

§ 1983.  Garcia proceeds *pro se* and *in forma pauperis.*

Garcia is incarcerated in the Washington County Detention Center (WCDC).  He filed

this case contending that his constitutional rights were violated by the Defendants.  Specifically,

he maintains they:  used excessive force against him on October 26, 2014; failed to provide him

with medical treatment; discriminated against him on the basis of race; and retaliated against

him.

A hearing was held on the Defendants' Summary Judgment Motion (Doc. 17) on July

20, 2015.  Garcia was allowed to orally respond to the Defendants' Motion at a hearing on July

20, 2015.  The Motion is now ready for decision.

**1.  Background**

Garcia was arrested on various criminal charges on September 27, 2014, and booked into

the WCDC.  Defendants' Exhibit (hereinafter Defts' Ex.) 1(a) at 1.  The first incident at issue

in this case occurred on October 26, 2014.  On that date, Garcia got into an altercation with another inmate.

A video of the incident was submitted into evidence as Defendants' Exhibit 1(f).  In the video, Garcia is initially seated at a table playing cards.  Garcia and a fellow inmate, Logan Brainerd, go into the back right corner of the cell block.  The two inmates square off and begin wrestling.  Garcia is thrown onto the floor.  They begin wrestling on the floor.

Deputy Gardner is the first detention officer to arrive.  He immediately separates the inmates.  Although only a portion of the bodies of Deputy Gardner and Garcia can be seen, it looks like Deputy Gardner pulls Garcia up by his arms and puts him against the back wall of the cell block.

Deputy Norris arrives moments later.  Not long after, Deputy Standrod arrives but stands back until Deputy Norris begins escorting Brainerd out of the cell block.  Deputy Standrod then goes to the back of the cell block where Deputy Gardner and Garcia are located.

Brainerd walks freely out of the back corner of the cell block and takes a seat at one of the tables.  Deputy Norris then apparently instructs Brainerd to get up because he stands back up and, escorted by Deputy Norris, disappears off the lower half of the screen, apparently leaving the cell block.

Within a few seconds, Garcia can be seen walking without assistance and putting his shirt on.  It appears that there is an exchange of words.  Deputy Gardner then takes Garcia and forces him against the wall.  Garcia is held against the wall for a short period of time, handcuffed, and then escorted out of the cell block.  Garcia testified that Deputy Standrod  put his finger in Garcia's face and his hand on Garcia's chest.  Garcia suffered no injury as a result of this.

-2-

Deputy Gardner submitted a use of force report about the incident.  The report states in part:

> I sep[a]rated the detainees and gave a verbal command to [Garcia] to stand up and face the wall. [Garcia] did not comply so I assisted Garcia to his feet and had him turn to face the wall where he proceeded to [use expletives and tell me to get off of him].  I told Garcia to face the wall, Garcia did not, I again told Garcia to face the wall and he refused to obey my verbal instructions.  I then turned him around and placed him against the wall while Norris was securing the other detainee.  Garcia did not have his uniform shirt on so I allowed him to retrieve it before we placed him in handcuffs.  As he retrieved his uniform, he became agitated again and refused to get back on the wall after he got his uniform.  I asked [him] multiple times to get onto the wall but he did not comply.  At this point I assisted Garcia to the wall and Deputy Standrod placed him in handcuffs. I walked Detainee Garcia out of the block into the hallway where Officer Standrod and I proceeded to ask him what had happened.

Defts' Ex. 1(a) at 50.  Pictures were taken of Garcia.  During the entire process, Garcia used expletives and derogatory terms towards the officers.  Deputy Norris believed that Garcia's aggressive manner was inciting the rest of the inmates not to follow the deputies' orders.  Id. at 51.

The pictures taken following this incident were submitted as Defendants' Exhibit 1(e). The first picture shows a small red abrasion on Garcia's forehead.  Id. at 1.  Garcia testified that his hands always look the way they are depicted in pictures two and three and he suffered no injury to his hands.  Id. at 2-3.  Pictures four and five depict portions of Garcia's uniform.  Id. at 4-5.  The uniform is in such poor shape it is difficult to discern anything from these pictures. The sixth picture shows an abrasion on Garcia's left nostril and a small circular red area on the nasal septum.  Id. at 6.  The seventh picture shows a tear on the left shoulder of Garcia's uniform.  Id.  Garcia testified the tear occurred when he was forced into the door. Garcia testified that he was denied medical care following the incident.

-3-

Garcia is Hispanic and believes the was treated differently than Brainerd because of it. Garcia states Deputy Gardner just came and scooped him up and put him against the wall. Garcia states he was not threatening the deputies but was objecting to their putting their hands on him.  Garcia admits he used expletives in talking to deputies.

Garcia points out that Brainerd was allowed to simply walk out of the cell block without the use of any force.  Garcia also testified that Brainerd was taken directly to see the nurse.

As a result of the incident, Garcia was charged with insolence to a staff member, failure to obey written/verbal orders of staff, and battery (fighting with another inmate).  Id. at 50. Garcia pled guilty.  Id. at 54.

Garcia testified that, as a result of the use of force against him, he had red swollen marks on his forehead and a bloody nose.  His forehead hurt the day of the incident and the following day.  Garcia also had a sore knee as a result of his altercation with Brainerd.  Garcia testified that he put in a request for medical care because his knee was hurting.  Although the request Garcia referred to, Defts' Ex. 1(b) at 7, mentions his knee being damaged and his nose "busted," Garcia asked to press charges against Brainerd and Deputy Gardner but did not request medical treatment.  Id.  Garcia testified this was the "same" as saying he needed medical treatment.  Id. He indicated this was the only request he submitted.

On November 3, 2014, Garcia was in an altercation with another inmate, Arturo Sainz. Defts' Ex. 1(a) at 56.  According to an incident report written by Deputy Adam Brown, Sainz admitted to hitting Garcia first.  Id.  Garcia then "just wrapped him up" until the officers got there.  Id.  Deputy Brown reported that Garcia had no visible marks or redness on his knuckles and was evaluated by nursing staff and was cleared medically.  Id

-4-

The nursing notes from that day state Garcia denied having any injury.  <u>Defts' Ex.</u> 1(c) at 6.  He had full range of motion, no deformities, no bruising or redness.  <u>Id.</u>  Garcia testified that he was denied medical care after this incident.

Garcia was in another altercation on November 8, 2014, with inmates Markeis Eubanks and Oscar Alonso.  <u>Defts' Ex.</u> 1(a) at 57.  According to an incident report written by Corporal Holiday, he viewed the following on the camera footage:

> I saw Eubanks push Garcia then step into his face.  Garcia pushed Eubanks away from him.  Eubanks punched Garcia, and they both grab a hold of each other. Two detainees (one identified as Oscar Alonso (22 yoa W/M)) went over to them.  Alonso started punching Eubanks while Garcia and Eubanks had a hold of each other.  They started into cell 22 when Detainee Maxwell Montgomery (22 yoa W.M) tried to break up the fight.  They all entered cell 22.  There were several detainees around the cell, so you could not see if any other punches were thrown.  The deputies entered the block, and all the detainees walked out of the cell. I determined Alonso was the other detainee involved by further research of the video.

> Garcia is receiving a major citation for 04-1 (Battery--Use of physical force on the person(s) of another.)  Garcia is receiving the 04-1 for punching Eubanks.

<u>Id.</u>[1]

Garcia testified that he had bumps on his head after this incident.  He testified that he was not offered medical attention after the incident on November 8th and believed this was a result of discrimination.  He indicates he was just taken to booking and then put in the "hole."  Garcia testified the other inmate complained that his knee hurt and was taken to see the nurse. According to Garcia, he was not told to put in a request to see the nurse on the kiosk.  He testified that normally if an injury occurs to an inmate when guards are present, the inmate is taken to see the nurse right away and does not need to put in a medical request.

---

[1]No video from this incident was preserved by the WCDC.

Garcia submitted a grievance that states as follows:

On the day Nov. 8 I got into it with an inmate and got hit on the head and face.
Even though the [guards] [k]new about it they did not give me my right to go see
the nurse or doctor even though they [k]new I got hit.  Even though if I refuse
they still gotta take me to go see the nurse because [what if] I got a tum[o]r later
in the future.

Defts' Ex. 1(b) at 15.

Garcia was evaluated by medical staff on November 9, 2014.  He was complaining of
headache and back pain.  Defts' Ex. 1(c) at 8.  He reported having been injured on the side of
his head during an altercation with a guard three weeks ago.  Id.  It was also noted that he had
been in fights with inmates on November 3, 2014, and November 8, 2014.  Id.  Garcia reported
injuries to his hand from fights that occurred three to four years ago and also indicated he was
hit in the head with a crowbar.  Id.  It was noted that the back pain could be the result of his bunk
mattress.  Id.  It does not appear that any treatment was prescribed.  Id.

Garcia testified that he also complained about tenderness on the right side of his head.
Garcia testified the nurse just looked at his head and asked questions.  Garcia indicated he asked
for a bottom rack and an extra mattress and got neither.

**2.  Applicable Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences
in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
"Once a party moving for summary judgment has made a sufficient showing, the burden rests
with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that

AO72A
(Rev. 8/82)

a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

**3.  Discussion**

As noted above, Garcia asserts that his federal constitutional rights were violated in the following ways by Defendants:  excessive force was used against him on October 26, 2014; they failed to provide him with medical treatment; they discriminated against him on the basis of race; and they retaliated against him.

**(A).  Excessive Force--October 26, 2014**

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from "the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989)(citation omitted).  Any punishment of a pretrial detainee violates the Due Process Clause.  Edwards v. Byrd, 750 F.3d 728, 732 n. 2 (8th Cir. 2014).  Any use of force is unconstitutional if the force was used to "injure, punish, or discipline" a detainee.  Id. at 732. A use of force does not amount to unconstitutional punishment if it is "but an incident of some other legitimate governmental purpose." Bell v. Wolfish, 441 U.S. 520, 535, 538 (1979).

AO72A
(Rev. 8/82)

The Supreme Court, in a case decided on June 22, 2015, addressed the standard to be applied in analyzing excessive force claims brought by pretrial detainees. The Court held that a pretrial detainee need only show that an officer's use of force was objectively unreasonable to prevail on an excessive force claim. <u>Kingsley v. Hendrickson, et al</u>, 135 S. Ct. 2466, 2470 (2015). In determining whether a given use of force was reasonable or excessive, the Court said the following may bear on the issue:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

<u>Id.</u> at 2473. The Court noted that the list was not exclusive but instead only illustrated the "types of objective circumstances potentially relevant to a determination of excessive force." <u>Id.</u>

Viewing the evidence in the light most favorable to Garcia, I believe the Defendants are entitled to summary judgment on this claim. While force was used, the Defendants were breaking up an altercation between two inmates. Garcia admits that he was being disruptive or belligerent, using expletives and telling the officers not to put their hands on him. The video captured the entire incident including the use of force by the Defendants. Plaintiff was taken to the wall twice by Deputy Gardner but there is no indication in the video that more force was used than necessary in doing so on either occasion or that the force was in anyway used to punish Garcia. <u>Bell</u>, 441 U.S. at 539 n. 21 ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned"). The minimal injuries suffered by Garcia, a reddened area on his forehead and a small abrasion on his left nostril, even if I assume these minor injuries were caused by the conduct of the deputies rather than the fight with Brainerd,

-8-

belies the use of any excessive force.   Askew v. Millerd, 191 F.3d 953, 958 (8th Cir. 1999)("Section 1983 is intended to remedy egregious conduct, and not every assault or battery which violates state law will create liability under it").

With respect to Deputy Standrod, the only use of force attributed to him by Garcia is putting his finger in Garcia's face and his hand on Garcia's chest.  Garcia testified he suffered no injury from Deputy Standrod's actions.  A trivial use of force is not cognizable under § 1983. Jackson v. Buckman, 756 F.3d 1060, 1068 (8th Cir. 2014).

Defendants use of force was incident to legitimate governmental purposes--breaking up the fight and gaining control of a recalcitrant inmate.  There is no evidence that the force was used to injure, punish, or discipline Garcia.  There is no genuine issue of material fact as to whether the amount of force used was more than was necessary to terminate the incident and secure the detainees.

Defendants also maintain they are entitled to qualified immunity.  Qualified immunity "is an *immunity from suit* rather than merely a defense to liability."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original).  It "is a means of protecting government officials from vexatious lawsuits questioning the discretionary performance of their duties." Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989).

Analyzing a claim of qualified immunity requires a two-step inquiry. Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012).   "An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation."  Robinson v. Payton, No. 14-1462, 2015 WL 3937653, *3 (8th Cir. June 29,

2015). "Unless the answer to both these questions is yes, the defendants are entitled to qualified immunity." Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009). At the summary judgment phase, a district court is required to view the genuinely disputed facts in the light most favorable to the non-moving party, provided the record does not so contradict the facts as to render so viewing them unacceptable to any reasonable juror. O'Neil v. City of Iowa City, 496 F.3d 915, 917 (8th Cir. 2007).

Defendants are entitled to qualified immunity. As noted above, the facts do not establish the violation of a federal constitutional right. The video does not demonstrate the use of excessive force by the Defendants.

### (B).  Denial of Medical Care

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.[2] See Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, Garcia must prove that Defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the [officers] actually knew of but deliberately disregarded those needs.'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997)).

---

[2]Kingsley,135 S. Ct.at 2470  applies only to excessive force claims.  See e.g. Roberts v. C-73 Medical Director, No 1:14-cv-5198, 2015 WL 4253796 (S.D.N.Y. July 13, 2015); Kennedy v. Board of County Commissioners for Oklahoma County, No CIV 15-398, 2015 WL 4078177 (W.D. Okla. July 6, 2015).

In order to show  he suffered from an objectively serious medical need, Garcia must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).  Society does not expect prisoners to have unqualified access to health care.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct."  Popoalii v. Correctional Medical Services, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted).  "Treatment may violate the Eighth Amendment only if it involves something more than a medical judgment call, an accident, or an inadvertent failure to give medical care. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Starbeck v. Linn County Jail, 871 F. Supp. 2d 1129, 1144 (N.D. Iowa 1994).  An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." Nelson, 603 F.3d  at 449.

-11-

The "Constitution does not require [jail officials] to handle every medical complaint as quickly as each inmate might wish." <u>Jenkins v. County of Hennepin, Minn.</u>, 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. <u>Laughlin v. Schriro</u>, 430 F.3d 927, 929 (8th Cir. 2005).

Garcia maintains he was denied medical care following the October 26, 2014, and November 8, 2014, incidents. Viewing the facts in the light most favorable to Garcia, I find no genuine issue of material fact as to whether Defendants exhibited deliberate to Garcia's serious medical needs. First, I do not believe the minor injuries sustained by Garcia constitute serious medical needs. <u>See e.g., Lockett v. Suardini</u>, 526 F.3d 866, 877 (6th Cir. 2008)(minor cuts and lacerations do not support a claim that the injuries were "objectively speaking, sufficiently serious to necessitate medical treatment"); <u>Blakemore v. Kalamazoo County</u>, 390 F.3d 890, 898 (6th Cir. 2008)(collecting cases)(no constitutional claim where the prisoner has very minor injuries for which many people outside prison would not even think of seeking treatment); <u>Goodwin v. Kennedy</u>, No. CV 13-1774, 2015 WL 1040663, *12 (E.D.N.Y. March 10, 2015)("cuts, lacerations, bruises, and other superficial injuries . . . are not sufficiently serious to support a deliberate indifference claim")(internal quotation marks and citations omitted).

Second, to be liable under § 1983, the Defendants must have personally violated Garcia's federal constitutional rights. <u>See e.g., Jackson v. Nixon</u>, 747 F.3d 537, 543 (8th Cir. 2014). The Defendants are not medical care providers and there is no evidence suggesting they were involved in providing medical care or treatment. <u>See e.g., Keeper v. King</u>, 130 F.3d 1309, 1314 (8th Cir. 1997)(official who is not involved in medical decisions and has no medical expertise

-12-

cannot be liable for medical staff's diagnostic decisions).   Garcia was aware of the request/grievance kiosk system.  He did not submit a medical request for treatment following the October 26, 2014, altercation.  There is no suggestion that the Defendants were present during the November 8, 2014, incident.

Third, at least with respect to the November 8, 2014, incident, there was at most a one day delay before Garcia was seen by medical personnel.  To be liable as the result of a delay in medical treatment, the Defendants must have ignored an acute or escalating condition unless the delay adversely affected Garcia's prognosis.  See e.g., Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1994).  There is no such evidence here.

### (C).  Discrimination

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race."   Wolff v. McDonnell, 418 U.S. 539, 556 (1974)(citation omitted).   Only *deliberate* discrimination is actionable under the Equal Protection Clause.   See e.g., Personnel Administrator v. Feeney, 442 U.S. 256, 260 (1979); Washington v. Davis, 426 U.S. 229, 239- 48 (1976).  Thus, a claim of racial discrimination under the Equal Protection Clause requires a showing of discriminatory intent.  Washington, 426 U.S. at 239-40.

Here, there is no genuine issue of fact as to whether any of the named defendants intentionally discriminated against Garcia because he is Hispanic.  In connection with the October 26, 2014, incident there is no evidence in the summary judgment record suggesting that Brainerd was using expletives, objecting to the guards touching him, or in any way disobeying the officers' orders.  Both Garcia and Brainerd were removed from the pod and separated.  While

-13-

there is some disagreement as to the content of the conversation between Garcia and the guards, Garcia admits to engaging in what amounts to disruptive behavior.  There is no indication at all that the fact that Garcia is Hispanic had any impact or effect on the Defendants' actions.  In short, there is nothing from which an inference of discrimination can be drawn.

### (D).  Retaliation

Garcia appears to believe the Defendants retaliated against him by charging him with disciplinary violations.  I have serious doubts that Garcia engaged in protected speech when he was speaking with the Defendants on October 26, 2014.  See e.g., Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999)(government may impose speech limiting regulations).  However, there is no need to make that determination, as Garcia pled guilty to insolence to a staff member and not obeying orders to face the wall.  Defts' Ex. 1(a) at 54.  He therefore cannot maintain a retaliation claim.

"An inmate may maintain a cause of action for retaliatory discipline . . . where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights." Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008).  "A prima facie case of retaliatory discipline requires a showing that:  (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline."  Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007).

It has been held that "if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules and regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail."  Goof v. Burton, 7 F. 3d 734, 738 (9th Cir. 1993).  "[A] report from a correctional officer, even if disputed by the inmate and

-14-

supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." <u>Hartsfield v. Nichols</u>, 511 F.3d 826, 831 (8th Cir. 2008).

In this case, the records indicate that Corporal Justin Alderson held a disciplinary hearing on October 30, 2014, regarding Garcia's alleged rule violations on October 26, 2014. <u>Defts' Ex. 1(a)</u> at 54. Corporal Alderson had the incident reports completed by the officers. <u>Id</u>. At the hearing, Garcia pled guilty to the rule violations and was given five days in disciplinary segregation. <u>Id</u>. Based on this, Garcia's retaliatory discipline claim fails.

### 4.  Conclusion

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (Doc. 17) be **GRANTED** and this case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 21st day of August 2015.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-15-